J-A03008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| KRYSTAL PEREA | : | |
| | : | |
| Appellant | : | No. 3455 EDA 2016 |

Appeal from the Judgment of Sentence August 10, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  MC-51-CR-0002181-2016

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED MARCH 12, 2018**

Appellant, Krystal Perea, appeals from the judgment of sentence entered in the Philadelphia Court of Common Pleas, following her bench trial conviction for possession of a controlled substance.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.

> On January 21, 2016, Police Officer Kolb was on duty at approximately 4:45 p.m. in the vicinity of 5547 Walnut Street in Philadelphia.  He was responding to a radio call [from an anonymous tip] for a person with a gun at 5500 Walnut Street, described as [a] Hispanic male with a red hoodie, glasses[,] and carrying a black firearm.  When [Officer Kolb] pulled up at the scene, he observed [Appellant], who had short shaved hair and was wearing a red–hooded sweatshirt and glasses—she looked like a male and matched the description of the flash.  When Officer Kolb first saw [Appellant], [she] had her hand underneath her hooded sweatshirt in the waistband, and [Officer Kolb]

---

[1] 35 P.S. § 780-113(a)(16).

---

*   Retired Senior Judge assigned to the Superior Court.

immediately shouted to her to pull her hand out. Appellant then instantaneously fled, but when [Officer Kolb] ordered her to the ground, she fell. When the officer approached Appellant, she pulled her hand out of her waistband, she had a clear plastic bag filled with three blue vials containing a white substance, alleged crack cocaine.

[Officer Kolb] testified that [he] had arrived in a marked vehicle, within a minute of receiving the radio call. The area was known for drug sales and shootings. When [Officer Kolb] initially arrived at the location, the person he saw appeared to be a Hispanic male, [wearing a] red-hooded sweatshirt and glasses, with short[,] shaved hair. Officer Kolb has previously encountered people who carry guns without a license, and they typically keep them in their waistbands. [Appellant's hand was] under her sweatshirt jacket at her waist. … [Officer Kolb] asked Appellant to show her hands for officer safety because he believed she had a firearm in her waistband.

(Trial Court Opinion, filed February 22, 2016, at 1-2) (internal citations omitted).

Appellant filed a suppression motion in municipal court. On August 10, 2016, the court held a suppression hearing and denied relief. Appellant proceeded to a waiver trial in municipal court that same day. The court convicted Appellant of possession of a controlled substance and sentenced her to nine months' probation. On August 25, 2016, Appellant timely filed a petition for writ of *certiorari* under Pa.R.Crim.P. 1006. After a hearing on October 26, 2016, the Philadelphia Court of Common Pleas denied Appellant's petition. Appellant timely filed a notice of appeal on November 3, 2016. On December 21, 2016, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P.

1925(b); Appellant timely complied on January 11, 2017.

Appellant raises the following issue for our review:

> WHERE POLICE STOPPED APPELLANT BECAUSE SHE MET THE DESCRIPTION AND LOCATION OF A PERSON ALLEGED IN AN ANONYMOUS TIP TO HAVE A GUN, AND SHE WAS STANDING ON A WINTER'S DAY WITH HER HANDS UNDER HER SWEATSHIRT IN HER WAISTBAND, WAS NOT REASONABLE SUSPICION LACKING AND SUPPRESSION OF PHYSICAL EVIDENCE REQUIRED UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 8 OF THE PENNSYLVANIA CONSTITUTION?

(Appellant's Brief at 3).

Appellant argues the physical evidence the police found in her possession should have been suppressed because the police subjected her to an illegal detention. Appellant claims when the police asked her to put her hand in the air, she became the subject of an investigative detention. Appellant avers she only matched the description of an anonymous tip, which does not give police reasonable suspicion to conduct a **Terry**[2] stop absent independently corroborated criminal activity. Appellant maintains that she merely stood on the sidewalk with her hand in her waistband, which is not an indication that criminal activity is afoot. Appellant submits the police needed more than a hunch or suspicion to conduct the investigative detention. Appellant concludes this Court should vacate her conviction or, alternatively, reverse the trial court's denial of her suppression motion and

_____

[2] **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

remand for a new trial with instructions to suppress the evidence. We disagree.

Our standard of review of the denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to plenary review.

*Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa.Super. 2012), *appeal denied*, 618 Pa. 684, 57 A.3d 68 (2012).

The focus of search and seizure law "remains on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime." *Commonwealth v. Moultrie*, 870 A.2d 352, 356 (Pa.Super. 2005) (quoting *Commonwealth v. Blair*, 860 A.2d 567, 571 (Pa.Super. 2004))

(internal quotation marks omitted). "[I]n assessing the lawfulness of citizen/police encounters, a central, threshold issue is whether…the citizen-subject has been seized." ***Commonwealth v. Strickler***, 563 Pa. 47, 57, 757 A.2d 884, 889 (2000).

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Goldsborough***, 31 A.3d 299, 305 (Pa.Super. 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (quoting ***Commonwealth v. Bryant***, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005)).

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity.

* * *

> To determine if an interaction rises to the level of an investigative detention, *i.e.*, a **Terry** stop, the court must examine all the circumstances and determine whether police action would have made a reasonable person believe [she] was not free to go and was subject to the officer's orders.
>
> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.
>
> * * *
>
> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted).

"[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and

- 6 -

objective basis for suspecting the individual stopped of criminal activity."

***Commonwealth v. Cottman***, 764 A.2d 595, 598-99 (Pa.Super. 2000) (quoting ***Commonwealth v. Beasley***, 761 A.2d 621, 625-26 (Pa.Super. 2000), *appeal denied*, 565 Pa. 662, 775 A.2d 801 (2001)).

> [T]he totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

***Commonwealth v. Young***, 904 A.2d 947, 957 (Pa.Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (quoting ***Commonwealth v. Conrad***, 892 A.2d 826, 829 (Pa.Super. 2006), *appeal denied*, 588 Pa. 747, 902 A.2d 1239 (2006)) (internal citations and quotation marks omitted).

"While a tip can be a factor [in determining whether reasonable suspicion existed], an anonymous tip alone is insufficient as a basis for reasonable suspicion." ***Commonwealth v. Leonard***, 951 A.2d 393, 397 (Pa.Super. 2008) (quoting ***In re M.D.***, 781 A.2d 192, 197 (Pa.Super. 2001)). "Because an anonymous tip typically carries a low degree of reliability, more information is usually required before investigating officers develop the reasonable suspicion needed to support an investigatory stop of a suspect." ***Commonwealth v. Fell***, 901 A.2d 542, 545 (Pa.Super. 2006).

> Police cannot initiate a detention based solely upon an anonymous tip that a person matching the defendant's description in a specified location is carrying a gun. However, if the person described by the tipster engages in other suspicious behavior, such as flight, reasonable suspicion justifying an investigatory detention is present.

> Evasive behavior also is relevant in the reasonable-suspicion mix. Moreover, whether the defendant was located in a high[-]crime area similarly supports the existence of reasonable suspicion. Finally, if a suspect engages in hand movements that police know, based on their experience, are associated with the secreting of a weapon, those movements will buttress the legitimacy of a protective weapons search of the location where the hand movements occurred.

*Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa.Super. 2009) (*en banc*), *appeal denied*, 605 Pa. 694, 990 A.2d 727 (2010) (internal citations omitted). Thus, a combination of factors can quickly coalesce to form the basis for reasonable suspicion, where one factor alone might fail. *Commonwealth v. Gray*, 784 A.2d 137 (Pa.Super. 2001).

Instantly, Officer Kolb responded to a call, based on an anonymous tip, in a high-crime area, for a person carrying a gun, described as a Hispanic male with a red hoodie and glasses. Officer Kolb arrived on scene within one minute in a marked vehicle and observed Appellant, who had short, shaved hair and was wearing a red sweatshirt and glasses. Officer Kolb noticed Appellant's hand was in her waistband and shouted at her to remove her hand for officer safety. Appellant fled and fell to the ground. Appellant pulled her hand out of her waistband, which revealed a clear plastic bag filled with three blue vials containing crack cocaine. Officer Kolb then arrested Appellant. The court denied Appellant's suppression motion and convicted her of possession of a controlled substance.

Here, when Officer Kolb asked Appellant to remove her hand from her

waistband, the interaction changed from a mere encounter to an investigative detention. *See Jones, supra.* Appellant's match of the description from an anonymous tip was not enough by itself to justify an investigative detention. *See Foglia, supra*; *Fell, supra*. Officer Kolb, however, did have reasonable suspicion based on the totality of the circumstances: Appellant matched the description from the call; Appellant was located in a high-crime area; Officer Kolb arrived on scene within one minute; the anonymous tip was for a person with a gun; Appellant had her hand in her waistband, which Officer Kolb knew from his experience could indicate a secreted firearm. *See Foglia, supra*; *Leonard, supra*; *Young, supra*; *Gray, supra*; *Cottman, supra*. The record supports the court's decision to deny Appellant's suppression motion. *See Hoppert, supra*. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/18